**LATIMER, Appellee,**

v.

**LATIMER, Appellant.**

[Cite as *Latimer v. Latimer*, 179 Ohio App.3d 90, 2008-Ohio-5655.]

Court of Appeals of Ohio,
Ninth District, Medina County.

No. 08CA0007–M.

Decided Nov. 3, 2008.

L. Ray Jones, for appellee.

Steve C. Bailey, for appellant.

DICKINSON, Judge.

## INTRODUCTION

{¶ 1} Dennis and Cynthia Latimer divorced after 34 years of marriage. The trial court ordered Mr. Latimer to pay Ms. Latimer $1,000 a month for 90 months as spousal support and retained jurisdiction over the term and amount. When Mr. Latimer retired a few years later, Ms. Latimer began receiving $1,099 a month from his pension in addition to the $1,000 a month in support. Mr. Latimer, therefore, moved to terminate his support obligation. A magistrate denied his request. Mr. Latimer objected, but the trial court overruled his objections, concluding that not only should Mr. Latimer continue paying $1,000 per month as spousal support, his obligation should continue beyond the 90–month term the court had originally imposed. Because the trial court did not abuse its discretion, this court affirms.

## FACTS

{¶ 2} The Latimers married in 1967. Although Ms. Latimer received a teaching degree in 1970, she stayed home to raise their six children. When they divorced in 2002, the trial court imputed income to Ms. Latimer because it found she could still work. The court found that Mr. Latimer earned over $66,000 per year as an engineer for an automobile manufacturer, and ordered him to pay Ms. Latimer child support and $1,000 a month as spousal support for 90 months.

{¶ 3} Some of the things the court anticipated would happen after the divorce did not happen. Although the Latimers assumed that their home had a value of $350,000, giving them $100,000 in equity to divide, it sold for only $250,000 because there was mold in it. In addition, Ms. Latimer was unable to obtain a full-time job as a teacher. Although she applied for jobs in several states, no one would hire a woman over 50 years old with a teaching degree from 1970 who had never taught. Although she was able to work occasionally as a substitute teacher, the most she was able to earn in a single year was $11,642, and she usually earned less than $5,500. After she stopped receiving child support, she

could not afford to rent an apartment, purchase medical insurance, or replace her 13–year–old car, which had over 165,000 miles on it.

{¶ 4} Mr. Latimer, meanwhile, married a woman who works full time as a teacher's aide. He moved into her house, which is paid off. His income increased substantially in the years after the divorce. In 2006, he received an early-retirement offer from his employer. Because he was 62, suffered from various health problems, and had read articles about continuing financial problems in the auto industry, he accepted the offer. Ms. Latimer received $31,000 from Mr. Latimer's early-retirement bonus and began receiving $1,099 per month from his pension. Because she was receiving more from his pension than he had been paying in spousal support, Mr. Latimer moved to terminate his support payments.

{¶ 5} Following a hearing on Mr. Latimer's motion, a magistrate denied his request. Mr. Latimer objected, but the trial court upheld the magistrate's decision. The trial court also vacated the 90–month term, making the support order indefinite unless Ms. Latimer cohabitates or remarries. Mr. Latimer has assigned two errors.

## CHANGE IN CIRCUMSTANCES

{¶ 6} Mr. Latimer's second assignment of error is that the trial court incorrectly vacated the 90–month spousal-support term because there was no evidence of a change in circumstances. "Where modification of an existing order for the payment of sustenance alimony is requested, the threshold determination is whether the order *can* be modified, which requires a finding of a change in circumstances since the order was entered." (Emphasis sic.) *Leighner v. Leighner* (1986), 33 Ohio App.3d 214, 215, 515 N.E.2d 625; see also R.C. 3105.18(E). "[A] change in the circumstances of a party includes, but is not limited to, any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses." R.C. 3105.18(F). "The term 'any,' as it is used in R.C. 3105.18(F), does not mean 'substantial' or 'drastic.' In reviewing a party's request to modify a spousal support, the trial court need only determine whether a change has occurred in the party's economic status (i.e., an increase or decrease in wages, salary, living expenses, or medical expenses) *after* the spousal support order was entered into. The change could have less than a significant effect on the party's economic status; it is within the discretion of the trial court to decide whether a change has, in fact, occurred." (Emphasis sic.) *Kingsolver v. Kingsolver*, 9th Dist. No. 21773, 2004-Ohio-3844, 2004 WL 1620723, ¶ 23.

{¶ 7} "If the trial court concludes that it has jurisdiction to modify the spousal support award, it must then determine 'whether or not the existing order should be modified.'" *Swift v. Swift,* 9th Dist. No. 23642, 2008-Ohio-1055, 2008 WL 649583, ¶ 13, quoting *Leighner,* 33 Ohio App.3d at 215, 515 N.E.2d 625. "This inquiry requires the court to reevaluate the existing order in light of the changed circumstances." *Swift,* 2008-Ohio-1055, 2008 WL 649583, at ¶ 13. The court looks to the factors provided by R.C. 3105.18(C) in order to conduct this reevaluation. Id. "[T]he finding as to whether there has been a change in circumstances that, ultimately, warrants a modification or termination will not be reversed absent an abuse of discretion." *Mottice v. Mottice* (1997), 118 Ohio App.3d 731, 735, 693 N.E.2d 1179.

{¶ 8} Mr. Latimer concedes that his retirement was a change in circumstances that gave the trial court jurisdiction to modify the spousal-support award. He has argued, however, that the fact that he retired does not support the trial court's decision to vacate the 90–month term. According to him, it does not make sense that his support obligation should be extended indefinitely "in light of" his retirement. He has also argued that there is no evidence of any other change in circumstances that could justify the court's action. He has noted that neither he nor Ms. Latimer asked the court to vacate the 90–month term.

{¶ 9} The trial court found that there had been a change in circumstances because "Mr. Latimer has taken an early retirement buy out and Mrs. Latimer has been unable to become employed in any meaningful way as a teacher as was contemplated at the time of the divorce." Mr. Latimer has argued that there is no evidence that the court had contemplated that Ms. Latimer could obtain employment as a full-time teacher. It knew her age, education, and lack of work history and imputed only $12,480 in income to her for child-support purposes, which is minimum wage.

{¶ 10} In determining whether there was a change in circumstances, the court's reason for imputing $12,480 to Ms. Latimer is irrelevant. See *Kingsolver v. Kingsolver,* 9th Dist. No. 21773, 2004-Ohio-3844, 2004 WL 1620723, at ¶ 21, fn. 3 (noting that a change in circumstances does not have to be unforeseeable). The trial court found that despite trying to gain meaningful employment as a teacher or in retail sales, Ms. Latimer earned only $5,200 in 2004, $11,642 in 2005, and $5,458 in 2006. The trial court also found that, although Mr. Latimer earned $66,000 at the time of the divorce, he earned over $100,000 per year after the divorce. While Mr. Latimer has argued that the tax returns the court relied on for his increase in income contained both his and his wife's incomes, he did not present any evidence indicating how much of the income was his wife's.

{¶ 11} Regarding Mr. Latimer's argument that neither party sought to modify the 90–month term, this court notes that once a court determines that it has

jurisdiction to modify a support order, it must reexamine the existing order in light of the changed circumstances. *Swift*, 2008-Ohio-1055, 2008 WL 649583, at ¶ 13. This requires a two-step determination: whether spousal support is still necessary, and, if so, what amount is reasonable. *Leighner*, 33 Ohio App.3d at 215, 515 N.E.2d 625. "In addressing the question of whether the existing order should be modified, the trial court's discretion is guided and limited by the consideration of all relevant factors, including those listed in R.C. 3105.18[ (C) ]." Id.

{¶ 12} After reviewing each of the factors listed in R.C. 3105.18(C) in light of Mr. Latimer's retirement and Ms. Latimer's decreased income, the trial court concluded that Ms. Latimer still needed spousal support. It also concluded that "the factors overwhelmingly favor the continuation of spousal-support for an indefinite period of time." Because the court had jurisdiction to reconsider the spousal-support award and considered all of the relevant factors in determining whether to modify it, this court concludes that it did not abuse its discretion when it decided to vacate the 90–month term. Mr. Latimer's second assignment of error is overruled.

## UNREASONABLE, ARBITRARY, or UNCONSCIONABLE

{¶ 13} Mr. Latimer's first assignment of error is that the trial court abused its discretion because, instead of terminating his spousal-support obligation, it vacated the 90–month term. He has argued that the court's decision was unreasonable, arbitrary, or unconscionable.

{¶ 14} Mr. Latimer has argued that the trial court's decision was unreasonable or unconscionable because his decision to accept the early-retirement offer was financially responsible and increased Ms. Latimer's income. He has noted that, if he had not accepted the buyout, Ms. Latimer would have continued receiving $1,000 a month for the remaining 33 months of the 90–month term, for a total of $33,000. Because he accepted the buyout, she received $31,000 immediately and began receiving $1,099 a month in pension benefits. According to him, although her benefits when he retired would have been slightly higher if he had continued working, in light of his age, health issues, and his company's financial troubles, it is unlikely that he would have been able to work much longer or would have received another incentive offer before he retired. He has argued that he made the best financial decision for Ms. Latimer and had a right to rely on the 90–month support term.

{¶ 15} Mr. Latimer has also argued that, because he cannot unretire, he has no source from which to pay the support. He receives only $1,173 per month from his pension. Even if he begins drawing social security early, his total monthly

income will be $2,719, only $1,719 after paying $1,000 to Ms. Latimer. Ms. Latimer, on the other hand, will get $1,099 from his pension, $1,000 in spousal support, plus any income that she earns. He has argued that this is unreasonable because it leaves him with significantly less income than she receives.

{¶ 16} The trial court found that during the marriage, the Latimers enjoyed an upper-middle-class lifestyle. "For years since the divorce, while Mr. Latimer earned over $100,000 annually, [Ms.] Latimer has lived in poverty, trying to sustain herself after thirty-four years of marriage on $12,000 per year in spousal support." It found that Mr. Latimer lives in a home that is paid for in full and that his wife works at a local high school. Mrs. Latimer cannot afford a one-bedroom apartment and has had to migrate between living with her children and family friends. It found that Mr. Latimer does not have any health problems that impede his ability to work. Ms. Latimer, on the other hand, cannot afford health insurance, had to undergo eye surgery that cost $1,800, has asthma, cannot afford the medication or inhalers needed to treat her condition, and cannot work in the fast-food industry because of allergies. The court found that Mr. Latimer paid over $26,000 in cash for a new car, while Ms. Latimer has had to drive a 13–year–old car with 165,000 miles on it. It found that because of his income and paid-in-full house, Mr. Latimer had been able to save a lot of money. Ms. Latimer had not been able to save anything. The court also found that Mr. Latimer received 80 percent of their postdecree income, while Ms. Latimer received only 20 percent.

{¶ 17} Mr. Latimer has not challenged the trial court's factual findings. In light of Mr. Latimer's substantial savings and lack of financial obligations and Ms. Latimer's health and financial hardships, this court concludes that the trial court's decision to vacate the spousal-support term was not unreasonable or unconscionable.

{¶ 18} Mr. Latimer has also argued that the trial court's decision was arbitrary. He has noted that Ms. Latimer did not ask for the 90–month term to be vacated and has argued that the trial court's decision is inconsistent with its decision in *Incorvaia v. Incorvaia,* Medina County Court of Common Pleas No. 02DR0356 (March 13, 2007).

{¶ 19} This court has already determined that even though Ms. Latimer did not ask the court to vacate the 90–month term, it did not abuse its discretion when it determined that the term should be vacated in light of the parties' changed circumstances. Regarding the trial court's decision in *Incorvaia,* it is factually distinguishable. Ms. Latimer did not receive any proceeds from the sale of the marital home to use to buy a house for herself. She has been unable to find a full-time job. Mr. Latimer's income increased significantly after the divorce, and he does not have to make mortgage payments. This court concludes

that the trial court's decision to continue Ms. Latimer's spousal-support payments was not arbitrary. Mr. Latimer's first assignment of error is overruled.

## CONCLUSION

{¶ 20} The trial court did not abuse its discretion when it vacated the 90–month spousal-support term. The judgment of the Medina County Common Pleas Court is affirmed.

Judgment affirmed.

CARR, P.J., concurs.

SLABY, J., dissents.